December 22, 2020

**VIA ECF**

Honorable Barbara C. Moses
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

   Re: *Dolores et al. v. Titan Construction Services LLC et al.*
     <u>19 Civ. 11056 (BCM)</u>

Dear Judge Moses:

  Along with Pechman Law Group PLLC, we represent Plaintiffs Jose Alvaro Dolores, Jose Hugo Romero Ventura, Eliberto Gil, Luis Carcamo, Efren Valentin, Steven Morales, Marco Hernandez, Adelfo Hernandez, Jose Franco Lagos, Jacobo Hernandez, Deniz Lobo, Stevens Hernandez, Rodolfo Romero, Jesus Ramirez, Raul Patino, Angel Lobo, and Luis Martinez (collectively, "Plaintiffs") in the above-referenced matter. Together with counsel for Defendants Titan Construction Services LLC, Jose Inaky Garcia, and Juan Garcia (collectively, the "Titan Defendants", and together with Plaintiffs, the "Parties"), we submit this joint letter-motion for approval of the Parties' settlement agreement (the "Agreement"), enclosed as Exhibit 1.[1] For the reasons set forth below, the Court should approve the Agreement, dismiss this case, and retain jurisdiction over this matter for purposes of enforcing the Agreement.

    **I. FACTUAL AND PROCEDURAL HISTORY**

  Plaintiffs are seventeen construction workers who allege that they were formerly employed by Defendant Titan Construction Services LLC and its owners, Jose Inaky Garcia and Juan Garcia. Plaintiffs initiated this case by filing a Complaint (ECF No. 1) on December 2, 2019 in the Southern District of New York, in the action styled *Dolores et al. v. Titan Construction Services LLC, et al.*, No. 19-cv-11056 (AT) (BCM) (the "Action").[2] Through their Complaint, Plaintiffs brought claims on behalf of themselves and other similarly situated individuals against the Titan Defendants and purported subcontractor organizations Mucu Contracting Corp., Regalado Contracting Inc., and El Castillo Contracting Corp., and additional individual defendants Amador Garcia, Cesario Mucu, and Eric Mercado (collectively, "Defendants") alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the New York Labor Law § 190 *et seq.* ("NYLL"). Specifically, Plaintiffs alleged that Defendants paid them at "straight-time" rates, thereby failing to pay

---

[1] Exhibits to this letter-motion are referred to by their corresponding exhibit number. Exhibits to the Parties' Agreement are referred to by their corresponding exhibit letter (*e.g.*, Exhibit A to the Parties' Agreement is referred to in this letter-motion as Ex. A.).

[2] Six Plaintiffs were named in the initial Complaint (ECF No. 1). Nine Plaintiffs were named in the Amended Complaint (ECF No. 18). An additional eight Plaintiffs later joined this Action as opt-ins.

them overtime wages as required by the FLSA and NYLL, failed to pay all wages owed for all hours worked as required by the NYLL, and failed to provide Plaintiffs with wage notices and accurate wage statements as required by the NYLL. (ECF No. 1 at ¶¶ 79-95, ECF No. 18 at ¶¶ 93-109). Accordingly, Plaintiffs sought the recovery of unpaid wages and overtime wages, liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs under the FLSA and NYLL, along with statutory damages based on Defendants' alleged wage notice and statement violations under the NYLL.

On December 3, 2019, the Court set an initial conference for April 4, 2020 (ECF No. 5), and on December 30, 2019, the Court referred the case to mediation (ECF No. 15). On January 21, 2020, counsel for the Titan Defendants delivered a pre-motion letter to Plaintiffs' counsel, in accordance with Rule III(B) of Judge Torres' Individual Rules, about two purported deficiencies in Plaintiffs' Complaint. In response to this letter, Plaintiffs filed an Amended Complaint on February 25, 2020 (ECF No. 18).[3]

On March 2, 2020, counsel for the Titan Defendants delivered a second pre-motion letter to Plaintiffs' counsel, contending that Plaintiffs' Amended Complaint failed to (1) show a joint enterprise among the corporate defendants and (2) show that the individual Titan Defendants were Plaintiffs' employers under the FLSA and NYLL. Plaintiffs responded to the letter on March 9, 2020, advising the Titan Defendants that they did not intend to file a Second Amended Complaint. On March 13, 2020, the Titan Defendants filed a pre-motion letter laying out the basis for their anticipated motion to dismiss, in accordance with Rule III(A) of Judge Torres' Individual Rules (ECF No. 21), to which Plaintiffs filed a response on March 25, 2020 (ECF No. 24).

The Titan Defendants filed their Motion to Dismiss and accompanying Memorandum in Support on April 22, 2020 (ECF Nos. 36, 37), contending that Plaintiffs were never in fact employed by the Titan Defendants and that Plaintiffs' Amended Complaint failed to assert particularized facts to state a claim against the Titan Defendants under either the FLSA or NYLL (ECF No. 37 at 1). Plaintiffs' filed their Opposition to the Motion to Dismiss on May 14, 2020 (ECF No. 40), asserting that Plaintiffs' Amended Complaint pleaded sufficient facts to state claims against the Titan Defendants as Plaintiffs' employers under the FLSA and NYLL. The Titan Defendants filed their Reply on May 27, 2020 (ECF No. 45). That Motion is still pending with the Court.

The Parties engaged in discovery per the Court's Case Management Plan (ECF No. 34) pending a ruling on the Motion to Dismiss. Plaintiffs served document requests and interrogatories on the Titan Defendants, and the Titan Defendants served documents requests and interrogatories on nine of the seventeen total Plaintiffs. Plaintiffs' initial production of documents in response to the Titan Defendants' requests totaled 466 pages, and included, *inter alia*, copies of checks received by Plaintiffs, timesheets, text between Plaintiffs and alleged Titan officers, and photographs of Plaintiffs on alleged Titan

---

[3] Prior to filing their Amended Complaint, Plaintiffs advised the Court by letter of the pending Amended Complaint, and requested an extension of the February 28, 2020 deadline to complete mediation (ECF No. 16), which was granted by the Court (ECF No. 17). The Parties subsequently filed a joint request to stay mediation pending initial discovery (ECF No. 19), which was granted by the Court (ECF No. 20).

worksites. The Titan Defendants' initial production of documents in response to Plaintiffs' requests totaled 561 pages, and included, *inter alia*, purported agreements with alleged subcontractor organizations, work orders, and copies of purported payments to alleged subcontractor organizations. The Parties each served deficiency letters in response to the respective first productions, and provided supplemental document productions. Plaintiffs' supplemental production totaled 700 pages, and included text and email chains between Plaintiffs and alleged Titan officers. The Titan Defendants supplemental production totaled 5,906 pages, and included texts and email chains from alleged Titan officers.

On November 7, 2020, the Parties filed a joint letter requesting an adjournment of the remaining discovery schedule in light of their agreement to participate in a private mediation session before JAMS mediator Stephen Sonnenberg, Esq. (ECF No. 48), which was subsequently granted by the Court (ECF No. 49). The Parties successfully reach a settlement in principle following an eleven-hour mediation on November 17, 2020. The settlement terms have now been finalized and are contained in the Parties' Agreement, which they present to the Court for review and approval pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). Subsequent to the mediation, Plaintiffs filed a notice of voluntary dismissal without prejudice with respect to the remaining non-Titan defendants, which was approved by the Court (ECF No. 52). The Parties also filed a notice of consent to Your Honor's jurisdiction with respect to remaining proceedings, and Judge Torres subsequently referred the case to Your Honor on December 2, 2020 (ECF No. 53). On December 22, 2020, the Parties filed a notice of voluntary dismissal without prejudice as to the individual Titan Defendants Jose Inaky Garcia and Juan Garcia.

## II. THE SETTLEMENT IS FAIR AND REASONABLE

*Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), provides that stipulated dismissals settling FLSA claims with prejudice require the approval of a United States District Court or the Department of Labor. 796 F.3d at 200. In considering the fairness of a proposed settlement, "[t]ypically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Siler v. Landry's Seafood House - N. Carolina, Inc.*, No. 13-CV-587 RLE, 2014 WL 2945796, at *7 (S.D.N.Y. June 30, 2014) (citation omitted). Where "the proposed FLSA settlement reflects a reasonable compromise over contested issues, it should be approved." *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 305 (E.D.N.Y. 2015) (quoting *Siler*, 2014 WL 2945796 at *7). Courts in the Second Circuit consider the totality of the circumstances, including the following factors, when determining whether a proposed settlement is fair and reasonable:

> (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotations omitted). The Parties believe the settlement here is fair and reasonable under these factors.

**A. The Parties' Agreement is Fair and Avoids Serious Litigation Risks**

The Parties' Agreement resolves bona fide disputes over sharply contested issues, represents a substantial recovery for Plaintiffs in light of their potential recovery range and the serious risks they face in a continued litigation, and enables the Parties to avoid considerable expenses that would be incurred were this matter to proceed through depositions and to trial and appeals.

As noted above in the discussion of the Titan Defendants' Motion to Dismiss, a central disputed issue in this Action has been the question of whether the Titan Defendants were Plaintiffs' employers for purposes of the FLSA and the NYLL. The Titan Defendants have maintained throughout negotiations that they were not Plaintiffs' employers, contending that Plaintiffs were instead employed by the co-defendant subcontractor organizations. In support of their position, the Titan Defendants produced purported subcontractor agreements and payments from Titan to the co-defendant subcontractors, and have contended that the Titan Defendants did not direct Plaintiffs' work or maintain Plaintiffs' payroll, timesheets, and personnel records. Plaintiffs have countered the Titan Defendants arguments by reference to, *inter alia*, timesheets signed by Plaintiffs bearing Titan's logo, text and email messages between Plaintiffs and alleged Titan officers, and the expected testimony from Plaintiffs with respect to their employment by Titan. If litigation were to continue, Plaintiffs continue to face significant risks in regard to their ability to establish that the Titan Defendants were their employers for purposes of the FLSA and NYLL. For example, an important component of Plaintiffs' argument rests on their ability to demonstrate that individual defendant Amador Garcia were Titan officers and exercised control and authority over Plaintiffs' employment—a contention that the Titan Defendants have disputed.

If Plaintiffs ultimately fail in establishing that the Titan Defendants were their employers, they risk a total loss of recovery. The ability to secure any monetary recovery from the alleged subcontractor organizations—which were named and served in this Action but did not appear—is highly unlikely. Plaintiffs' counsel has been unable to uncover information regarding these companies' assets, their continued operations, and their shareholders. Accordingly, the Parties' Agreement allows Plaintiffs to avoid this serious risk presented by continued litigation.

Nor is the Titan Defendants' status as Plaintiffs' employers the only disputed issue in this case. In the absence of payroll records, Plaintiffs' counsel calculated Plaintiffs' damages based largely on Plaintiffs' recollections of hours worked and pay received. The Titan Defendants have argued that Plaintiffs have exaggerated hours worked, contending that the hours Plaintiffs claimed to have worked are generally not credible, that Plaintiffs did not work evening hours as they claim, and that Plaintiffs' damages calculations do not account for absences and holidays. Were this litigation to continue, Plaintiffs' ability to establish hours worked will rest almost exclusively on their testimony, the credibility of which must be determined by a finder-of-fact. An adverse determination on the issue of hours worked would substantially reduce Plaintiffs' range of recovery, as the majority of

damages in the matter are attributable to the alleged non-payment of overtime premiums for hours worked in excess of forty per workweek.

In light of these disputes and continued litigation risks, the Parties' Agreement is fair and reasonable and represents a substantial recovery for Plaintiffs. Under the Agreement, the Titan Defendants will pay the total sum of $650,000.00 to resolve this Action without any admission of liability, with an initial payment of $200,000.00 by December 31, 2020 and equal installments of $50,000.00 over the following nine months. (Ex. 1 at § 4(A), (C)). After deduction of attorneys' fees and costs, Plaintiffs will receive $434,618.12, an amount equal to 57.15% of Plaintiffs' unpaid wages as calculated by Plaintiffs' counsel based on Plaintiffs' disputed recollections of hours worked and pay received. (*See* Ex. C, Payment Schedule). The lowest recovery by any individual Plaintiff is $7,500.00, and the highest recovery by any Plaintiff is $80,651.24. *Id*. For the reasons discussed above, Plaintiffs recovery under the Agreement represents a significant degree of success obtained in light of the serious litigation risks presented in this case.

Consideration of the expenses avoided as a result of the Agreement further confirms its reasonableness. If litigation were to continue, the Parties would next take and defend numerous depositions addressing the main factual disputes at issue—the Titan Defendants' status as employers and the hours worked by Plaintiffs. Afterwards, either Party could move for summary judgment. The Court would likely deny summary judgment, considering the fact-intensive nature of the disputes, and the Parties would then proceed to trial followed by potential appeals. Proceeding with the litigation would consume significant amounts of time and resources, potentially including resources that the Titan Defendants have agreed to put towards the resolution of this Action through the Parties' Agreement. This concern is particularly relevant in the Covid-19 context, which the Titan Defendants have noted has had an impact on their business.

In light of all of the foregoing, following extensive arms-length negotiations at an eleven-hour mediation with a neutral and experienced mediator, the Parties agreed to the settlement embodied in the Agreement. The Agreement's terms are consistent with *Cheeks*. For example, the release in the Agreement is limited to Plaintiffs' wage-and-hour claims (Ex. 1 at § 5) and there are no confidentiality or non-disparagement provisions. To protect Plaintiffs against a potential default, the Parties jointly request that the Court retain jurisdiction over this matter for purposes of enforcing the terms of the Agreement, thereby helping to guarantee that all payments under the Agreement are made and clear. *Id.* § 3. As a further protection for Plaintiffs, the individual Titan Defendants will execute confessions of judgment, which Plaintiffs may utilize only if Defendants default on a payment and fail to cure their default as set forth in the Agreement. (*See* Ex. B). Accordingly, for all of the reasons discussed, the Parties believe that the terms of their Agreement are fair and reasonable and comply with all requirements under *Cheeks* and its progeny.

### B. The Allocation of Attorneys' Fees and Costs is Reasonable

Harrison, Harrison & Associates, Ltd. and Pechman Law Group PLLC (together "Plaintiffs' Counsel" or "Counsel") have used their considerable expertise and experience in litigating wage-and-hour cases to provide a satisfactory result to Plaintiffs. In accordance with the retainer agreements Plaintiffs signed with their Counsel, Counsel's attorneys' fees

of $208,332.64 are equal to just under one-third of the total settlement after reimbursement of $7,049.24 in costs incurred by Plaintiffs' Counsel in prosecuting this matter. (*See* Ex. C).[4] Costs incurred by Plaintiffs' Counsel are: (1) the $400.00 filing fee, (2) $450.00 for service of the Complaint and Amended Complaint, (3) $579.90 in interpretation and translation fees; and (4) $5,619.34 in JAMS mediation fees.

The contingency fee Plaintiffs agreed to in their retainer agreements should be approved. *In re Lawrence*, 24 N.Y. 3d 320, 339 (2014) ("Absent incompetence, deception or overreaching, contingent fee agreements that are not void at the time of inception should be enforced as written."). "A contingency fee award is presumptively valid where 'the proposed fee amount is exactly one-third of the net settlement amount[.]'" *Angamarca v. Hud-Moe LLC*, No. 18-CV-1334 (RA), 2018 WL 6618412, at *1 (S.D.N.Y. Dec. 17, 2018) (quoting *Yunjian Lin v. Grand Sichuan 74 St Inc.*, No. 15-CV-2950 (RA), 2018 WL 3222519, at *5 (S.D.N.Y. July 2, 2018). Furthermore, "courts in this Circuit have routinely found an award representing one third of the settlement amount to be reasonable." *Yong Yuan Wang v. Mandarin Glen Cove, Inc.*, No. 18-CV-03266 (DLI) (CLP), 2019 WL 5695910, at *2 (E.D.N.Y. Sept. 30, 2019) (citing *Romero v. Westbury Jeep Chrysler Dodge, Inc.*, No. 15-cv-4145 (ADS) (SIL), 2016 WL 1369389, at *2 (E.D.N.Y. Apr. 6, 2016)); *see also Montalvo v. Arkar Inc.*, No. 17-CV-6693 (AJN), 2018 WL 2186415, at *2 (S.D.N.Y. May 10, 2018) ("Courts routinely award 33.3% of a settlement fund as a reasonable fee in FLSA cases.") (citation omitted).

Additionally, we note that although Plaintiffs' Counsel's lodestar of approximately $135,425.00 to date in this matter is less than the contingency fee,[5] the award is fair and reasonable in light of the significant result obtained and the considerable risk Plaintiffs' Counsel undertakes by representing plaintiffs in FLSA cases on a contingency fee basis. *See, e.g.*, *Pinguil v. We are all Frank, Inc.*, No. 17-CV-2237 (BCM), 2018 WL 2538218, at *5 (S.D.N.Y. May 21, 2018) ("Courts in this District, as elsewhere, recognize that lawyers working on contingency accept a risk of nonpayment with each case, and therefore may appropriately seek a premium over their lodestar when they are successful.") (citing *Montalvo*, 2018 WL 2186415, at *2). Here, the attorneys' fee award represents a lodestar multiplier of 1.54. This lodestar multiplier is comfortably within the range that this Court has previously found to be reasonable. *See, e.g.*, *Lesser v. TIAA Bank, FSB*, No. 19-CV-1707 (BCM), 2020 WL 6151317,

---

[4] Examples of the contingency agreements signed by Plaintiffs with their respective firms are attached as Exhibit 2. For the Court's convenience, an English translation of the contingency fee provision (§ 1) in the Pechman Law Group LG retainer follows: "*Contingency fee* - In the event that your claims are resolved by settlement between you and Titan, or the matter is fully litigated and results in a judgment in your favor, you agree to pay the Firm, as its fees for legal services rendered, one-third (*i.e.*, 33.33%) of the gross aggregate monetary recovery, including costs as taxed, prejudgment interest, and attorneys' fees awarded. Such percentage shall be computed on the net sum recovered after deducting from the gross amount recovered any out-of-pocket expenses and disbursements including but not limited to the costs of serving and filing legal documents, photocopying, postage, transcripts of court proceedings and depositions, travel, messenger fees, expert testimony, and any other services properly chargeable to the enforcement of the claim or prosecution of the action."

[5] A copy of Harrison, Harrison & Associates, Ltd.'s contemporaneous billing records is attached as Exhibit 3, and a copy of Pechman Law Group PLLC's contemporaneous billing records is attached as Exhibit 4.

at *4 (S.D.N.Y. Oct. 20, 2020) ("[W]hen analyzing the fairness of a fee award under *Cheeks*, 'courts in this district will often approve lodestar multipliers between two and four times.'") (quoting *Souffrant v. 14-15 Mertens Place Corp.*, 2020 WL 1166231, at *2 (S.D.N.Y. Mar. 11, 2020) (internal quotation omitted)). The significant degree of success obtained by Plaintiffs' Counsel in this litigation in light of the risks presented and uncertainties avoided, and the general objective of encouraging efficient resolution of cases, also support a finding that the fee award is reasonable. *Id.* Accordingly, Plaintiffs' Counsel respectfully requests that the Court approve the contingency fee in this case as fair and reasonable.

We thank the Court for its time and consideration of this matter. We are available to respond to any inquiries the Court may have. For the Court's convenience, a proposed stipulation and order of dismissal executed by the Parties is attached to the Parties' Agreement as Exhibit A.

Respectfully submitted,

HARRISON HARRISON & ASSOC., LTD.

*/s/ David Harrison*
David Harrison, Esq.
Julie Salwen, Esq.
110 State Highway 35, 2nd Floor
Red Bank, New Jersey 07701
Tel: (718) 799-9111
dharrison@nynjemploymentlaw.com
jsalwen@nynjemploymentlaw.com

PECHMAN LAW GROUP PLLC

*/s/ Louis Pechman*
Louis Pechman, Esq.
Vivianna Morales, Esq.
Galen C. Baynes, Esq.
488 Madison Ave., 17th Floor
New York, New York 10022
Tel: (212) 583-9500
pechman@pechmanlaw.com
morales@pechmanlaw.com
baynes@pechmanlaw.com

*Attorneys for Plaintiffs*

Enclosures

cc: Counsel of Record via ECF